Grant E. Naegle v. Commissioner. Norma C. Naegle v. Commissioner.
Naegle v. Commissioner
Docket Nos. 2337-63, 2662-63.
United States Tax Court
T.C. Memo 1965-212; 1965 Tax Ct. Memo LEXIS 118; 24 T.C.M. (CCH) 1099; T.C.M. (RIA) 65212; August 6, 1965
William McRae, First National Bank Bldg., Phoenix, Ariz., for the petitioners. Eugene H. Ciranni, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies against the petitioners in these consolidated cases for the years and in the amounts as follows: Name of Peti-
Docket
Defi-
tioner
No.
Year
ciency
Grant E. Naegle
2337-63
1956
$16,160.34
1960
540.96
Norma C. Naegle
2662-63
1959
1,134.58
1960
599.70
The one issue that is present in both dockets is whether petitioners' earnings constitute community income rather than separate income. The main questions in the Grant E. Naegle docket involve his failure to report embezzlement income and how much, if any, net operating loss he can carry *119 over from earlier years to offset his 1956 income. There is an issue in the Norma C. Naegle docket as to whether she is entitled to take both of petitioners' children as exemptions. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Grant E. Naegle and Norma C. Naegle are husband and wife and they have resided together as husband and wife in Phoenix, Arizona, since their marriage in August of 1944. They have two daughters who reside with them. Prior to April 16, 1957, Grant E. Naegle mailed a document to the district director's office at Phoenix which was the printed 1956 Form 1040 with a note thereon written by Grant Naegle to the effect that he had been placed in receivership; that he had earned nothing in 1956; and that he had been supported that year by his wife's separate income. Grant E. Naegle filed a separate delinquent income tax return for the calendar year 1960 with the district director of internal revenue, Phoenix, Arizona. Norma C. Naegle filed timely separate income tax returns for each of the calendar years 1959 and 1960 with the Phoenix, Arizona, district director's office. Grant and Norma filed timely joint income tax returns *120 for each of the years 1957, 1958 and 1961. Petitioner Grant E. Naegle operated a property management and real estate brokerage business in Phoenix, Arizona, under the trade name of Naegle Property Services, from 1951 until August 6, 1956. On November 3, 1956, a Criminal Complaint, charging petitioner Grant E. Naegle with seven counts of grand theft by embezzlement and one count of drawing a check on an insufficient funds account, was issued by Justice of the Peace Al J. Flood of the Justice Court of West Phoenix Precinct, County of Maricopa, State of Arizona. On December 17, 1956, a second Criminal Complaint, charging petitioner Grant E. Naegle with one count of grand theft by embezzlement, was issued by Justice of the Peace Al J. Flood of the Justice Court of West Phoenix Precinct, County of Maricopa, State of Arizona. The charges against petitioner Grant E. Naegle were reduced to a single count, and prosecution under the second Criminal Complaint was delayed for a period of six months because petitioner Grant E. Naegle promised the Maricopa County Attorney that he would plead guilty to the second Criminal Complaint and would make full restitution of the funds he embezzled from *121 the clients of Naegle Property Services. On October 21, 1958, Grant E. Naegle was convicted in the Superior Court of Maricopa County, Arizona, upon his plea of guilty, of the charge of grand theft by embezzlement. The last part of said judgment of said court provided as follows: And it appearing to the Court that the ends of Justice will be subserved if sentence be not imposed upon said defendant at this time and defendant placed upon probation. It is therefore ORDERED, ADJUDGED AND DECREED according to the statutes of the State of Arizona, in such case made and provided, that the passing of sentence in this cause committing you Grant Naegle be suspended for a term of TEN (10) years from date, and that you Grant Naegle be placed on probation under the charge and supervision of the Adult Probation Officer of this Court, and that you Grant Naegle shall be permitted to go at large, upon the condition that you make restitution of the sums wrongfully embezzled in the approximate sum of $75,000. at the rate of $1,000. per month; said sum to be paid to Mr. De Marcus, Trustee, or some other Trustee, at the rate of $3,000. every three months; Trustee to make distribution to creditors *122 on a percentage pro rata basis semi-annually; bond of said Trustee to be in a sum approved by the Court, and the Trustee to make a full report semi-annually to the Probation Officer of Division No. 8. (s) Warren L. McCarthy, Judge Thereafter, on the petition of Grant E. Naegle, one Cecil De Marcus was appointed trustee by Judge Warren L. McCarthy in accordance with the terms of a trust agreement dated May 8, 1959. The said trust agreement provided as follows: TRUST AGREEMENT THIS Agreement, Made and entered into this 8th day of May, 1959, by and between GRANT E. NAEGLE, Trustor herein, and CECIL DE MARCUS, Trustee herein, WITNESSETH: WHEREAS, heretofore, GRANT E. NAEGLE operated a certain business within Maricopa County, Arizona, and WHEREAS, the said GRANT E. NAEGLE became obligated to certain persons as a result of the operation of said business, a list of said creditors being attached hereto and made a part hereof, and identified as Exhibits "A" and "B", and WHEREAS, as a result of said business transactions the said GRANT E. NAEGLE was charged with embezzlement and for such embezzlement received a suspended sentence for a period of ten (10) years by THE HONORABLE *123 WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, Arizona, and WHEREAS, under and by virtue of said suspended sentence one of the conditions was that the said GRANT E. NAEGLE was to execute an Agreement wherein one CECIL DE MARCUS, Certified Public Accountant, was to be appointed Trustee for specified purposes, and WHEREAS, the said CECIL DE MARCUS has heretofore and hereby agrees to act as Trustee under the direction of the said THE HONORABLE WARREN L. McCARTHY; NOW, THEREFORE, be it agreed as follows: 1. That CECIL DE MARCUS be and he is hereby appointed Trustee by the said GRANT E. NAEGLE with the approval of the said THE HONORABLE WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, Arizona, for the following purposes, to-wit: * * *
The trust agreement continues with a number of paragraphs outlining the duties of the trustee which were in general to collect assets and pay claims and the execution portion of the trust agreement was as follows: IN WITNESS WHEREOF, the parties hereto have hereunto affixed their signatures the day and year first above-written. /s/ GRANT E. NAEGLE GRANT E. NAEGLE Trustor /s/ CECIL DE MARCUS CECIL *124 DE MARCUS Trustee APPROVED this 8th day of May, 1959. /s/ WARREN L. McCARTHY JUDGE OF THE SUPERIOR COURT OF MARICOPA COUNTY, ARIZONA
Attached to the above trust agreement was a 20-page list of 274 unsecured creditors and the amount of each claim (Exhibit A), totaling $71,088.32 and one page showing two claims called "Priority Claims Allowed" (Exhibit B), totaling $4,120.82. Respondent determined a deficiency in Grant E. Naegle's 1956 income tax. Respondent took the position that the $75,000 was unreported embezzlement income but respondent estimated Grant had a net operating loss that year of $40,000 so his deficiency determination charges Grant with the receipt of $35,000 embezzlement income which he failed to report. He also determined that one-half of his wife's income (or $715.90) for that year was chargeable to Grant under the community property laws of Arizona. In his 1960 income tax return Grant E. Naegle reported $7,944.64 wages received and he took a deduction for $5,000 claimed for payments made by him as partial restitution of amounts embezzled in 1956. He also took a deduction for contributions explained in the return to be for some named (but unreadable) "missionary *125 fund, red cross, and other contributions" with only a total stated of $300. Respondent disallowed both of the above deductions. Respondent again determined Grant's and Norma's wages for 1960 constituted community income. Norma had earned $4,307.50 that year so in his computation respondent treated their wage income in the total sum of $12,252.14 as community income and one-half that sum, or $6,126.07, taxable to Grant. This gave Grant an overstatement in taxable wages of $1,818.57. In Norma's separate income tax return for 1959 she reported wages received in the sum of $3,683.52. In Grant's separate income tax return for that year he reported wages in the sum of $12,226.98. Respondent determined the total wage income of both, or $15,910.50, was community income with one-half, or $7,955.25, taxable on each separate return for that year. This resulted in a determination of overassessment against Grant for the year 1959 and a deficiency against Norma for that year. Respondent's determination of deficiency in Norma's 1960 income tax mainly involved his determination that Grant and Norma had community wage income in the total sum of $12,252.14 as previously explained, and one-half, *126 or $6,126.07, was taxable to Norma. Since she had reported her own salary, $6,126.07, her understatement was $1,818.57. Respondent's computations for each of the petitioners for all of the years involved took into consideration the allowance of the standard deduction when applicable and he also determined the two children were supported equally by Grant and Norma. Since Norma took both daughters as exemptions in all of her returns he disallowed one exemption on each of Norma's returns but added one to Grant's returns. Opinion We will first dispose of respondent's contention that the wage earnings of petitioners in 1956, 1959 and 1960 constituted community income rather than separate income. Arizona is a community property state, the state statutes providing that all property acquired by either husband or wife during marriage, with certain exceptions not here material, is the community property of the husband and wife. Ariz. Rev. Stat., Title 25, C. 2, Art. 2, § 25-211. However, it is conceded the earnings of each spouse can, under Arizona law, remain the separate property of each spouse if they enter into an antecedent contract to that effect. See Martha Locke Shoenhair, 45 B.T.A. 576, *127 where we held, under the laws of Arizona, an oral agreement between a lawyer and his wife that his earnings would remain his separate property was valid and effective to make his earnings from the practice of law his separate property. Respondent argues the evidence here is insufficient to establish the existence of the oral agreement. Petitioners both testified that prior to 1954 they had entered into an oral agreement providing that the income of each spouse would constitute the separate income of that spouse. During said years Norma was employed and she had a separate income and her own bank on which Grant could not sign checks. Grant had his own business bank account. They each treated their incomes as their separate property and during most of the years they filed separate income tax returns. During the three years they filed joint returns they reported their separate incomes. We hold the evidence was sufficient and that the earnings of each for each of the years involved were taxable to each as each spouse's separate property. Grant seems to argue that his activities with respect to 1956 did not constitute embezzlement and he denies on brief that he realized $35,000 of unreported *128 income in 1956. At the trial Grant's chief contention seems to have been that the embezzlement income received in 1956 should be offset by unclaimed net operating loss carryovers from earlier years. In his opening statement Grant's counsel admitted the $35,000 was received from embezzlement. In spite of this admission Grant seems to think respondent had some additional burden to prove that petitioner did in fact receive this $35,000, and he states on brief: "No proof was submitted as to the amount, if any, of additional income realized by Petitioner GRANT E. NAEGLE." Respondent's determination is presumptively correct, and since there was no proof on this issue we must conclude Grant did receive the $35,000 embezzlement income in 1956 and failed to report it. In his petition Grant did not specifically claim that he was entitled to offset unreported 1956 income by net operating loss carryovers. Respondent pointed this out at the trial when Grant first started to inquire into these earlier years. There is, however, a general allegation in Grant's petition that the business was operated at a loss from 1951 through August 6, 1956, so Grant was allowed to introduce any evidence designed *129 to prove the existence of net operating losses for earlier years. Grant cannot prevail under this theory on the record presented. All that we have is some vague testimony of office employees regarding the operations of the business in earlier years. The books and records had been destroyed (without Grant's fault) but he failed to introduce income tax returns for earlier years or any other records showing income or loss. On this theory he would have the burden to show the amounts of such net operating losses for earlier years and the burden of establishing that the losses were not entirely absorbed by income in prior years to which the losses must be carried before they would be available to reduce 1956 income. The evidence fails completely to show that there were any net operating loss carryovers available to reduce the 1956 income. We hold for respondent on the issue. There is another issue in the Grant E. Naegle docket involving deductions taken by Grant in 1960 for an alleged $5,000 partial restitution of amounts embezzled in 1956 and an alleged $300 charitable contribution deduction. Respondent disallowed both deductions. Petitioner introduced no evidence at all relating to these *130 adjustments. It must be concluded petitioner has abandoned the issues with respect to these disallowed 1960 deductions. Respondent's determination of disallowance will be upheld. There is another issue in the Norma C. Naegle docket. In the years 1959 and 1960 she took both daughters as exemptions. Respondent's adjustment allows her an exemption for only one of the daughters for said years. Again there is no evidence relating to this issue, so respondent's adjustments with respect to the exemption claims are sustained. It is to be noted respondent allowed one daughter as an exemption in Grant's returns for the years 1959 and 1960. Decisions will be entered under Rule 50.